THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY V. DOUGLAS BOURDETT.

No. 14,651.   (85 Pac. 820.)

SYLLABUS BY THE COURT.

RAILROADS—*Wrongful Refusal to Deliver Freight.* A railway company received a shipment of freight with the freight charges paid in advance. At the point of delivery its local agent demanded payment by the consignor of additional freight charges under a different classification, and also payment of a former freight bill which he conceived to be due the company from the same consignor for a previous shipment of the same article, and refused to deliver the shipment unless these additional sums were paid. After withholding possession for seven days the company made delivery without requiring payment of either claim. *Held,* in an action for damages, that the demand for payment of charges for a former shipment and refusal to deliver unless such demand was complied with render the withholding unlawful and preclude any inquiry into the merits of the other demand, and the company is liable for the value of the use of the shipment for the time it was unlawfully withheld.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed June 9, 1906. Affirmed.

### STATEMENT.

DOUGLAS BOURDETT brought this action against the railway company to recover damages on account of the wilful and unlawful withholding of a freight shipment. He was employed in the business of drilling wells for gas and oil, and operated a well-drilling outfit in Cowley county. On July 2, 1904, the drill was broken, and for the purpose of having it repaired he delivered it to the railway company at Winfield for shipment to Independence, consigned to Bovaird & Co., a firm doing general repair work at that place, and prepaid the freight charges thereon. Upon the arrival of the drill at Independence Bovaird & Co., having been notified, had their fires and men ready to begin work at once upon the repairs, expecting to complete the same within five hours and reship to Bourdett. They demanded the drill and were in the act of unloading it from their side-track when informed by the agent of the railway company at Independence that it would not be delivered until an additional sum was paid, amounting to $38.20. A bill was presented to them by the agent's clerk for this amount, made up of two separate items, one of $18.80 additional freight charges, and one of $19.40 which the agent claimed was due on a prior shipment of the same drill.

As soon as he was notified by Bovaird & Co. of the refusal to deliver the shipment Bourdett saw the railway agent at Winfield about the matter, who informed him that the agent at Independence had exceeded his authority and that he would wire him to release the shipment. After a second letter from Bovaird & Co. the plaintiff again called upon the Winfield agent, who said that the agent at Independence was inclined to be stubborn; that he had repeatedly wired him but could get no answer. The railway company held the shipment from the morning of July 5 until the afternoon of July 11, and then the agent at Independence released it upon a telegraphic order from the auditor to deliver

the shipment as if it had been loaded in a box car, and without demanding the extra charges. It was repaired on the 12th of July and reshipped to Winfield on the same flat car and at the same rate. It appeared that the railway company was informed of the purpose of the shipment at the time it was received at Winfield and during the time it was withheld at Independence. In the petition it was alleged:

"That the defendant, without any legal reason or excuse therefor, but for the purpose of annoying, delaying and injuring this plaintiff, and after having received in advance the full freight charges for said shipment, and after having been informed and well knowing that said shipment was made for the purpose of having the same repaired and that any delay upon its part would cause the plaintiff annoyance and damages, wilfully withheld the possession thereof and refused and prevented the said Bovaird & Co. the possession of said shipment for the period of eight days; that the said Bovaird & Co. were ready, willing and able to repair said shipment and reship the same to plaintiff within five hours after its receipt; that by said wrongful and unlawful acts of the defendant this plaintiff was deprived of the use of said shipment, and that its use was worth the sum of $20 per day, and that by reason thereof this plaintiff has been damaged in the sum of $160."

It was also alleged that the failure to deliver the drill caused plaintiff to lose the well upon which he was at work at the time the drill broke. Upon the trial the jury returned a verdict in favor of the plaintiff for $200, and found, in answer to special questions, that the damages for the loss of the well amounted to $60 and that the value of the use of the drill for the time it was withheld was $140. Plaintiff remitted the amount of damages allowed for the loss of the well, leaving only the damages for loss of the use of the drill in controversy.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*O. P. Fuller,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The defendant demurred to the evidence and the demurrer was overruled. It also asked for a peremptory instruction, which was denied. Error is assigned upon these rulings of the court, and it is contended that the plaintiff failed to make a *prima facie* case because there was a failure of proof of the allegation in the petition that the company wilfully and without any legal reason or excuse withheld the shipment from the consignee at Independence. It is urged that plaintiff's evidence shows that the shipment was not delivered because of refusal to pay the additional freight charges demanded; that as a matter of law it devolved upon plaintiff to prove that the charges were extortionate, illegal, unreasonable or in excess of the regular tariff rate charged other persons for like shipments.

The railway company sought at the trial to excuse its demand for the additional freight charges on the ground that, as the stem of the drill was too long to go in a box car with side doors, it was shipped on a flat car, and thereby became subject to a minimum charge equal to the charge for 5000 pounds at first-class rate under the Western classification, which made the charges amount to $23, and that the difference between this and the $4.20 prepaid was the $18.80 demanded by the agent at Independence. The defendant insists that it is the law that the shipper must tender the freight charges before he is entitled to possession; that if he believes the charges extortionate or unreasonable he may pay under protest and sue to recover the excess, or, it is said, he may bring his action in replevin to recover the possession. And because the plaintiff pursued neither of these remedies it is argued that he cannot maintain an action for damages for withholding the possession. If, before he is entitled to possession, he must tender the freight charges, his action in replevin would fail because tender had not

been made. Again, if it be true that he can maintain an action in replevin, he could in the same action recover damages for the unlawful withholding; and it is argued by plaintiff that, having obtained possession without replevin, he should be allowed to maintain an action for damages alone.

It is assumed in the argument of the plaintiff in error as well as in its entire brief that, as a matter of fact, the drill was withheld by the agent at Independence for refusal to pay $18.80 freight charges. The evidence of the defendant in error was that the agent's clerk notified Bovaird & Co. that the drill would not be delivered until $38.20 was paid, including not only the extra freight which the company claimed as due under the Western classification but an old account of $19.40 which the agent said was due from the consignor for shipping the same drill several months previously.

The jury in their answers to special questions found this to be the fact. It will not be necessary in our view of the case to consider the questions suggested by the plaintiff in error as to the relative rights of the parties, and the remedies of a consignor of freight in a case where the refusal to deliver was for the failure to pay freight charges, nor to inquire what effect the prepayment of the freight charges demanded at the point of shipment had upon the rights of the consignor to immediate delivery. Under any theory which might be taken of those questions the fact remains that the agent of the railway company at Independence included in his demand, and insisted upon payment of, a claim which did not arise out of the contract for shipment and which had no possible connection with it. With as much propriety he might have withheld delivery until a claim of the passenger department which he conceived to be due the company, or a board bill of his own against the consignor, was paid.

In view of the arbitrary conduct and unreasonable delay of the railway company every presumption should be indulged in favor of the judgment in this

case. It is attacked as an allowance of speculative damages, as not supported by any evidence showing actual loss of the use of the drill for seven days, and because it is said the wages of the men employed by the plaintiff were considered by the jury in determining the value of the use. There was some evidence that the use of the drill to plaintiff was worth $20 per day, and that the delay in the delivery of it occasioned the loss of at least seven days' use—under the circumstances, sufficient, we think, to support the verdict.

It is immaterial, therefore, that the jury disregarded the evidence in their special finding in reference to the usual and ordinary freight charges for similar shipments and in answer to the question whether the railway company used in its business a book known as the Western classification. The action of the company in withholding delivery for refusal to pay a claim wholly disconnected with the contract of carriage precludes an inquiry into the merits of its other demand.

We have examined the other errors suggested but find nothing requiring a reversal. The judgment therefore is affirmed.

All the Justices concurring.